Judge Mills
delivered the Opinion of the Court,
John Gains, as executor of Congreve Jackson, brought an action on the case against David Hamoton, the administrator or John Holliday, and dcciared with several counts.
in the first, ho declares that John Holliday was possessed of a slave which he represented ío 'be his. proper slave, held by him (Holliday) as the administrator of Ambrose Bush, and thereby deceitfully and fraudulently induced said Jackson to buy him at the price of 450 dollars But that the slave was not part of the estate of Bush, and did not belong to said Holliday as such* and belonged to,a.certain Lynden, *364 Comstock, whoso wife had taken the said slave away from one of the female distributees.of the said Congreve Jackson, to whom the slave had been assigned by the plaintiff, in the distribution of his estate.
Second •souril.
Third count..
í'OWlil oounf.
.Vinit ei'.mif.
Not.- — nil the count? aro irt c:i ■! tor Iho deceit of defendants in-?co 4- bill. L. K, TJ!, ÜS.
J’lun.
PlililUiffs,OVi‘ ■qpaop.
The second count, is the same in substance with the first, except that Holliday, the intestate of the defendant, is pbarged with selling the said-slave as administrator of Ambrose Bush, knowing him to he the proper slave of Nancy J. Comstock, ¿rid with concealing that fact.
The third count charges, that Holliday was possessed of the slave, and represented him to be the property of Nancy J. Comstock, -and that ho was authorized and empowered by the said N. J. Comstock to sell the slave, all which he knew to he false, hut; that the said slave belonged-to Lynden Comstock, husband of the said N. J. Comstock) yet he induced ;he said Congreve Jackson to buy anil pay for the slave, by the aforesaid fraudulent representations^ and then follows the allegation that the slave was taken away as in the other counts.
The fourth count avers, that the slave belonged to Lynden Comstock and his wife, and that said Holliday well knowing the fact, sold the slave as his own, concealing the truth and misrepresenting his title,- and the slave was lost gs before.
The fifth count, slates, the slave to be the property of N. ,T. Comstock^ that Holliday was possessed of him. and falsely and fraudulently represented that he was authorized by her to sell !dm, and did profess to sell the right of said N. J. Comstock to the Boy, which Congreve Jackson'juirrhased, when in truth, and in (act, he had no authority or right to sell the slave, and that N. J. Comstock had reclaimed him as stated in the first count.
The defendant pleaded that his intestate was not guilty.
On the trial, the plaintiff proved that the slave in question belonged to the estate of Ambrose Bush deceased, of which Holliday, the defendants intestate, was administrator) that Holliday had assented to the distribution of said Bush’s estate, and with the distributees had united in choosing men to d> • *365 vide; that all the distributees were present, except Nancy Julia Comstock, a daughter of said Bush, who with her husband lived out of the state, and that Holliday himself represented her as agent in said division, by virtue of a letter from her to that effect, and signed as agent for her a written agreement, evidencing the division; that each distributee took their portions, and acquiesced-in the division, and Holliday, for Comstock and wife, took into his possession the slave in question, and kept him for them, they not being in the country, and this slave was allotted to Mrs. Comstock, in full of her share of the estate; that some time afterwards, Holliday caused an advertisement to be inserted in the.public newspaper printed at the court-house of the county, to this effect:
Motion for non suit overruled.
Defendants, evidence.
“ Will be sold, to the highest bidder, on the 28th instant-, being court-day, before the door of John Dudley, in Winchester, a likely negro boy, seven years old, the property of Julia Comstock, to satisfy several executions. One half of the purchase money down, and the other, half in three months — the purchaser giving bond with approved security. December 19, 1818.
(Signed) John Holliday.”
He further proved that Congreve Jackson, the plaintiff’s testator, became the purchaser at the said sale, which Holliday conducted, and complied with its terms, and Holliday forthwith delivered him'the slave, and that on the death of said Jackson, the slave was assigned to one of his daughters, and was taken out of her possession by a relation of Julia Comstock, who now lived in this country with her, ami the slave could not be regained from them.
The defendants’ counsel moved the court to instruct the jury, on this evidence, as in case of a non suit. The court overruled the application.
The defendant, then proved that he sold the slave, by virtue of two decrees of the same court, rendered in two suits in chancery, the one of Francis Walker, against Lynden Comstock and John Holliday, as administrators of Bush, defendants, and the second .loremiah Hush complainant, and the same defendants. in the first suit, the decree was final, in the *366 latfer, interlocutory only, and then attempted to read in evidence, the records of said suits in Chancery.
Objetion to decrees offered in evidence sustained.
Instructions for plaintiffs as tn the damaged.
Instructions ns in case of non suit, can be given, only where it is "dear there is no evidence to support some neoesaajy fact.
7iistructinns ¡moved by defendant overyuled.
Ojie who soils a slave as asonl of'the /Mvner, when afterwards sued by vendee fordeoeit, in falsely affirming his authority ,has the onus probasndi of his agency on himseif ami must shew if’’
*366 But they were objected to, as confering upon Holliday, no authority to make said sale, or to sell the title of Julia or Lynden Comstock in the slave and as irrelevant. The courtsustainod the objection and would not suffer these records to be read.
The plaintiff mo\ ed the court to instruct the jury, that if they (bund for the plaintiff, the criterion of damages was the sum paid for the boy with legal interest thereon, from the time it was paid; and the court gave the, instruction.
The defendant then applied to the court, to direct the jury that they ought to make a reasonable deduction from these damages, for the use and hire of the boy, for the time that Jackson ami his representatives held him. But the court refused this instruction. To all these opinions-of the court, the defendant excepted, and spread the whole on record, and has prosecuted this writ of error, contending that all.these decisions, or'some one or move of them, are erroneous.
As to the motion to instruct the jury as in case, of a non suit, it cannot be sustained on t he ground that the evidence varied from all the counts in the declaration. For to say nothing of any other, the evidence substantially comported with the third and fifth counts, and conduced to prove the allegations therein contained: To wit, that the plaintiff assumed upon himself the right to sell the title of Julia Comstock, and that the property was hers, and he had no such authority.
Another ground on which the defendant below may have relied in this motion, was, that the evidence was insufficient to sustain either count. To sustain the motion, for the want of a sufficiency of evidence, the- deficiency ought to be clear, leaving out some link in tbc chain necessary to a recovery, and free from any evidence conducing to supply it.
It’is true, the evidence here of the. fraud or false representations of Holliday, that he had authority to pass the title of Mrs Comstock, or that which descended from her father, of whom she was known *367 Cube a daughter, was not of the strongest character But still no one could .read ills publication of. the sale, and then see him expose the slave in pursuance thereof, but roust have drawn the conclusion that be had authority.; for his words and actions plainly shewed that he assumed that authority, either by virtue of a power from her or her husband, or from executions against her. And as the authority to sell a slave may he private, or verbal, and not of record, the person who claims to'exercise it, ought to produce it, and the onus probandi lies upon him, when the authority has been assumed and is after-wards put in issue. The law will; in favor of an officer of justice, presume that hU does his duty until the contrary appears, and this doctrine has sometimes been carried so far, as to put the party impeaching his acts, to prove a negative; but the rule is not extended to individuals, as Holliday appears in this transaction. Neither he, nor his representatives can require their adversary to prove negatives — or that there was no authority. We therefore, conceive that the evidence here, weak as it is, was primu facie, sufficient to call upon his representative to prove his authority, and the court did not err in supposing the evidence adequate to this purpose.
Decrees a gainst a nod. resident distributee and exeoutor as guarnishce for money of . distributee in executors hands, constitute, under the circumstances hsie, no defence in an action by vendee of a slave, previously set .11-par( to distó-, hulee, and afterwards sold raider pretence of authority.
On (he rejection of the decrees in chancery, as irrelevant, and not proving any authority in Holliday, to dispose of the slave, we think the court below equally correct. In the first of these cases, I he complainant had set up in' his bill, sundry démands against Lynden Comstock, as a non resident, and till edged that he was entitled to a considerable sum of money, and a portion of slaves, in right of his wife, as one, of the distributees of Ambrose Bush, which were in the hands of said Holliday, as administrator. and Holliday is made a garnishee in the bill, with a prayer that the said estate might be -subjected to his demands. On a final heaving, the court liquidated the demands against Lynden Com-stock, and decreed that Holliday should pay the sum so ascertained, “out of the money in his hands, as administrator of Bush, provided the distributive shave of Mrs. Comstock should amount id so pntcA” *368 alter a previous decree of Jeremiah Bush was satisfied. Bush’s decree, which was the remaining one offered, was of the same nature, founded on a bill, sitting up demands against Lynden Comstock, and praying to subject the funds coming to him, and in the hands of Holliday, ánd it was interlocutory only. The court in that interlocutory decree, ascertained the amount to be-recovered by Jeremiah Bush, and to enable the court to decree payment out of the funds of Comstock in the hands of Holliday, appointed commissioners to take an account, and report the money and property in the hands of Holliday, coming to Lynden Cotastock, in right of his wife, as one of the heirs of Ambrose Bush, and to make their report to court; No report was ever made and the cause remained on the docket undecided. It is very evident that these decrees did not furnish any authority to HoIIaday, nor had they subjected the slave in his hands. The first one is only to have the residue of money, and not slaves, after Bush’s decree was satisfied, and it is still uncertain whether Bush’s decree will ever subject either money or slaves. These decrees did not authorise any sale by Holliday, nor were they executions, as his advertisement alleges. They, therefore, furnish no apology for the sale of the slave, nor do they conduce to prove even a mistake in a selling without authority, and of course (hey were properly excluded.
!n an action by vendee for deceit in rc.'•:pe«t of ¡lie title in the salo ofa slave, recovered by i.bo owner, ¡he law docs not iix the jui reliase money end ill-¡crest us the tsrilere.on of Uiin-uw--.
As to the instruction given relative to the criterion of damages, there is too great difficulty in sustaining the decision of the court below. This is .an action on the case for the fraud, and the criterion of damages is, in such cases, in a great measure left to the judgment of the. jury. The law, no doubt, requires that the compensation in damages should equal the injury occasioned by the fraud, and that injury was equal to the value of the slave lost, and the price, agreed to be given was no doubt strong evidence of that value. But to decide that interest should be given on that value, as matter ¡aw, was fixing a crilcreon which trammeled the discretion of the jury, who ¡night give orwithhold it as to (hem should scon; equitable.
11 von<^c li title, altor rocovery by tho aMuíhorfuS money had to bis use, lie W1!í,rí0<;í,c. entitled to mtorestn<;a matter ofiaw, juiy/ °
s“ch cases, or d'ecoit^no allowance |)C made Umna^csfw thohirowfthe property bce”i°hyC0°ho^r" owner, for it was not de-
Allan for appeiiant; Hanson for appellee*
if the plainti!F in this instance had elected to bring ''bxdebifatus assumpsit to recover bark the money which he liad paid, and bad trbated the sale as a nub lity he would not, according to the best authorities have been entitled to the interest thereon .as matter of law, and be ought not in this action to be allowed to recover interest on the supposition that the law bad fixed the interest and the principal as a legal critereon of damages. The judgment, therefore, of the court below, on this point, cánnot be sustained,
But we approve of the refusal of that court, to instruct the iurv to deduct from the damages, the reai, i • ",. , , ° , , sonablc hire oi the slave during the time the plaintiff’s intestate held him. This hire could not belong to Holliday, who had no title to the slave, and as far as appears in this suit, no authority to sell him. For it, Jackson or bis representatives might be held accountable to the true owner of the property, and in an action of detinue, that hire could be recovered by the real proprietor; of course no other person could be entitled to it.
But for the error of the court below on the next preceding point discussed, the judgment must be reversed with costs, and the verdict be set aside, and thecause be remanded for new proceedings notinconsis tent with this opinion.